## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| STEPHEN C. GLOVER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO: _____ |
| | ) | |
| THE GEM SHOPPING NETWORK, | ) | |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

COMES NOW, Stephen C. Glover ("Plaintiff" or "Glover") and files this Complaint for fraud, RICO, breach of contract, violation of the Georgia Fair Business Practices Act, violation of the Colorado Consumer Protection Act, bad faith and punitive damages against the Gem Shopping Network, Inc. ("GSN"), respectfully showing as follows:

## PARTIES AND JURISDICTION

### 1.

Plaintiff Glover is an individual resident of the State of Colorado.

### 2.

Defendant GSN is a Georgia corporation.  GSN may be served with summons and complaint by service on its registered agent, Carr R. Bradley, One

Sugarloaf Centre, 1960 Satellite Blvd., Suite 4000, Duluth, GA 30097.

3.

Personal jurisdiction exists in this Court as Defendant GSN is a Georgia corporation with a principle place of business in the State of Georgia, where it systematically and continuously transacts business.

4.

The Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there exists complete diversity of citizenship between Plaintiff and Defendant and the amount in controversy exceeds $75,000, exclusive of costs.

5.

Venue is proper in this Court because events giving rise to Plaintiff Glover's claims occurred in Georgia, within this District.

**FACTS**

6.

Defendant GSN is in the business of selling gems and jewelry to customers through television programing, internet and other medium.  On information and belief, nearly all of Defendant GSN's sales and business activities involve use of the United States Mail and/or interstate wire, television and internet.

7.

GSN holds itself out as an entity that specializes in the sale of jewelry at below market prices.  GSN's marketing materials and programming repeatedly state that it has established close relationships with suppliers, jewelry manufacturers and gemstone cutters that allow it to sell jewelry and collectibles at the best prices available "anywhere":

> Gem Shopping NetworkTM has spent over twenty years building and securing relationships with suppliers of the world's most sought-after colored gemstones. Not only do we have buying agents traveling the globe seeking out the sources of these stones, we also have supplier-representatives who travel to the U.S. for the opportunity to meet with us. Through these strong, direct relationships, we are able to pass unbelievable savings your way on the finest gemstones you will ever see.

(GSN Web site).  Indeed, this message is reiterated one way or another every few minutes of television and internet programing and is supported by frequent references to appraisals by "independent and certified" appraisers, and by the inclusion of appraisals in many of the items sold.

8.

In addition to the sale of gems and jewelry, GSN also sells, and sometimes includes as part of the charge for jewelry items, an appraisal of the item that is being sold.  The cost of the appraisal is often included on the GSN invoice for the jewelry purchased as a charge to be paid to GSN or as an item provided by GSN as part of the sale.

9.

The appraisals that accompany GSN's sale of jewelry are represented, advertised and made to appear independent, official, reliable and accurate.  Among other things, the appraisals often bear the trade-dress of institutions such as the Gemological Institute of America ("GIA"), the Association of Independent Jewelry Valuers ("AJIV"), and the National Association of Jewellery Valuers.

10.

The appraisals make affirmative and implied representations about the method, independence and reliability of the appraisal.   Such representations include, but are not limited to the following:

a.      "This report was prepared in accordance with the Uniform Standards of Professional Appraisal Practice (USAPA);"

b.      "The jewelry described within has been analyzed and graded in accordance with prescribed grading standards using "state of the art" methods and standard precision laboratory equipment;"

c.      "Every effort has been made to grade the diamonds and gemstones described in this document as accurately as possible within the normal and reasonable gemological ranges…;" and

d.      "The value expressed herein is based on the appraisers general expertise; qualifications; judgment; research of the appropriate market; (value(s) for the items; and purpose involved…"

11.

Many of the appraisals also included affirmative "Certifications" from the appraiser, further suggesting that the appraisal has been properly performed by an independent and qualified appraiser.  For instance, many appraisals contain some or all of the following "Certifications":

a.      "The statements of fact contained in this report are true and correct;"

b.      "I have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved;"

c.      "I have no bias with respect to the property that is the subject of this report or the parties involved in this assignment;"

d.      "My engagement in this assignment was not contingent upon developing or reporting on predetermined results;"

e.      "My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal;"

f.    "My analyses, opinions, and conclusions were developed and this report has been prepared in conformity with the *Uniform Standards of Professional Appraisal Practice (USPAP)* 2010-2011 Edition, published by the Appraisal Foundation."

12.

The appraisals constitute affirmative representations of fact that are intended to be relied on by the recipient of the appraisal, in this case, Plaintiff Glover.

13.

The appraisals were intended to: (1) give the purchaser of gems or jewelry a belief that they had obtained the gems or jewelry at a price that was under market value so that products would not be returned; and (2) as advertising to encourage the purchaser to make subsequent purchases, based on comparison between what they had paid and the statement of value contained in the appraisal.

14.

However, the appraisals provided by Defendants were not accurate or independent.  On information and belief, in addition to misstating the value of the item being sold, virtually all aspects of the appraisal were false.

15.

For instance, on information and belief:

a.     The appraisals were not prepared in accordance with the Uniform Standards of Professional Appraisal Practice;

b.     The jewelry described in the appraisals was not analyzed and graded in accordance with prescribed grading standards using "state of the art" methods and standard precision laboratory equipment;

c.     Every effort was not made to grade the jewelry as accurately as possible within the normal and reasonable gemological ranges;

d.     The value expressed therein was not based on the appraisers' general expertise; qualifications; judgment; research of the appropriate market value(s) for the items; and purpose involved…

e.     The statements of fact contained in the appraisals were not true and correct;

f.     The appraisers performing the evaluations did have a prospective interest in the property and did have personal interest with respect to the parties involved;

g.     The appraisers did have bias with respect to the property that is the subject of their reports;

h.     The appraisers' engagement in the assignments was contingent upon developing or reporting on predetermined results;

i.    The appraisers' compensation was contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client (in this case GSN), the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal; and

j.    The analyses, opinions, and conclusions were not developed in conformity with the *Uniform Standards of Professional Appraisal Practice (USPAP)* 2010-2011 Edition, published by the Appraisal Foundation" (Id.).

16.

On information and belief, Defendant GSN is an enterprise engaged in defrauding and other racketeering activities designed to trick customers into making repeat purchases from GSN by convincing them that they had and would continue to obtain products at prices well below value.

17.

In the spring of 2010, Plaintiff Glover saw programing on GSN indicating that he would be able to purchase jewelry at excellent prices.  Based on the statements made, he decided to make purchases from GSN that, in many instances, included what he reasonably believed to be a fair, independent and accurate appraisals.

18.

Advertising for the sales was done by interstate television broadcast, the sales were made by interstate telephone wire, and the deliveries of both the jewelry and the appraisal were made by United States mail.

19.

Consistent with the advertising about value, the appraisals that accompanying items of jewelry purchased by Plaintiff Glover were well above the price that Plaintiff Glover paid.

20.

Based on his comparison of the price paid for the initial purchases and the appraisals and other advertising by GSN, Mr. Glover made additional purchases from GSN.  In many instances, the jewelry items were purchased with an appraisal, which was well above the amount paid by Plaintiff Glover.

21.

Given the appearance and nature of the appraisals, Mr. Glover was justified in believing them to be accurate and in relying on their contents as an accurate description of the jewelry and an accurate statement of the value of the jewelry.

22.

Over the next year and a half, Mr. Glover made significant purchases from GSN.  Including the cost of shipping, insurance, appraisals and other additional

expenses, Mr. Glover spent in excess of one and a half million dollars ($1,500,000.00) in gross jewelry purchases from GSN.

23.

The majority of the significant purchases included appraisals in the form described herein and valued the items purchased above the purchase price.

24.

On information and belief, however, the jewelry and appraisals purchased by Plaintiff Glover were not what they were represented to be.  Among other things:

a.     The items were not worth what they were appraised to be and in many instances were worth only a portion of the price paid.

b.     The "statements of fact" set forth in the appraisals were not true and correct;

c.     The appraisers did have a personal interest in presenting false appraisals and had a personal bias towards GSN;

d.     The appraisers were not independent but were doing so much business for GSN, and receiving so much compensation and other benefits from GSN that they were predisposed to provide an appraisal that was not neutral, but was biased towards the interest of GSN;

e.     Both the engagement and compensation of the appraisers was contingent upon developing or reporting on predetermined results.

f.     The appraisers' analyses, opinions, and conclusions were not developed and the reports were not prepared in conformity with the *Uniform Standards of Professional Appraisal Practice (USPAP)* published by the Appraisal Foundation.

25.

Promptly upon discovery that the appraisals were false, the jewelry was not worth what it was appraised to be and the jewelry was not worth what had been paid, Plaintiff Glover contacted GSN to rescind the transaction, return the items and obtain a refund of the purchase price.

26.

Although it knew its appraisals were false and that the items it sold were not worth what they were appraised to be worth, GSN refused to accept a return of the items in exchange for a refund of Mr. Glover's purchase price.

27.

Accordingly, Plaintiff Glover was forced to retain counsel to assist him in recovering his damages.

28.

Although counsel for Plaintiff Glover pursued additional efforts to return the jewelry in exchange for a refund of Plaintiff Glovers' purchase price and additional damages, GSN continued to refuse to refund Mr. Glover's purchase price.

29.

Accordingly, based on Defendant's bad faith in the underlying enterprise, its refusal to resolve Mr. Glover's claims without being stubbornly litigious and its efforts to cause Mr. Glover unnecessary trouble and expense, Plaintiff Glover was forced to initiate this action to recover his damages.

**COUNT ONE**
**FRAUD**

30.

Plaintiff restates and incorporates the allegations of Paragraphs 1 through 29 as if fully set forth herein.

31.

Defendant GSN, acting independently and as part of a conspiracy, made affirmative representations about the products it sold to Plaintiff Glover, including, among other things, affirmative representations about the value of the items purchased by Plaintiff Glover, the independence and accuracy of the appraisals accompanying the jewelry, the method by which the appraisals were conducted and the standards by which the appraisal were conducted.

32.

GSN sold the false appraisals along with the jewelry knowing or reasonably believing they would deceive Plaintiff Glover into thinking that he had purchased

jewelry worth far more than what he had paid, and intending to cause him to purchase additional items from GSN.

33.

Defendant's representations regarding the value of the jewelry and the statements in the appraisals were knowingly false.

34.

Plaintiff Glover was justified in relying on the representations contained in the appraisals, including, but not limited to, the representations regarding the independence of the appraisers and the representations regarding the value of the jewelry.

35.

Indeed, on information and belief many other GSN customers have relied on similar representations in appraisals sold by GSN.

36.

Plaintiff Glover has sustained significant damages based on the false representations by Defendant GSN.  Among other things, the false representations: (1) deceived Plaintiff Glover into believing he obtained jewelry worth far more than what he paid and therefore not to return the jewelry during the period of the GSN return policy; (2) caused Plaintiff Glover to purchase more jewelry at prices that were, unbeknownst to him, inflated; (3) caused him to incur significant

shipping and insurance costs; (4) caused him to liquidate assets that were in investments and therefore lose potential gains in the market; and (5) caused him to incur significant attorneys' fees.

37.

The total damages incurred by Plaintiff as a result of Defendant's fraud will be demonstrated at trial.

38.

Plaintiff gave Defendant timely notice of their fraud and pursued rescission of the sale of all jewelry and related items.

39.

As such, at the election of Plaintiff, Plaintiff is permitted to rescind all purchases from GSN or to pursue damages for fraud.

## COUNT II
## FEDERAL AND STATE RICO

40.

Plaintiff restates and incorporates the allegations and averments of Paragraphs 1 through 39 of this Complaint as if fully set forth herein.

41.

Both the United States Congress and the Georgia Legislature have passed legislation making it a crime to engage in racketeer influenced and corrupt organizations.  The Federal law is codified at 18 USC § 1951 *et seq.* and the

Georgia law is codified at O.C.G.A. § 16-14-1 *et seq.* (collectively referred to as the "RICO Acts").

42.

Pursuant to the RICO Acts, it is unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, or to conspire to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property or personal property of any nature, including money. O.C.G.A. § 16-14-4(a); 18 USC § 1961 *et seq.*

43.

Engaging in a pattern of racketeering activity is defined as engaging in at least two acts of racketeering in furtherance of one or more incidents, schemes or transactions that have the same or similar intents, results, accomplices, victims or methods of commission or are otherwise interrelated. O.C.G.A. § 16-14-3(8); 18 USC § 1961 *et seq.*

44.

Predicate acts that constitute racketeering activity are enumerated in O.C.G.A. § 16-14-3(9)(A) and 18 USC § 1961.

45.

Defendant GSN is an enterprise that conspires to and does conduct and participate in racketeering activities in order to deceive customers, including

Plaintiff Glover and others, into purchasing items of jewelry at inflated prices, keep the items beyond any contractual period of return and retain their money.

46.

Defendant's predicate acts include, but are not limited to, the following:

**A.    Mail Fraud**

47.

Mail Fraud constitutes a predicate act under O.C.G.A. § 16-14-3(9)(A)(xxix) ("racketeering activity" means to commit, to attempt to commit, or to solicit, coerce, or intimidate another person to commit any crime which is chargeable by indictment under the following laws of this state…(xxix) Any conduct defined as "racketeering activity" under 18 U.S.C. § 1961(1)(A),(B),(C), and (D)).

48.

Mail Fraud also constitutes a predicate act under 18 USC § 1961(1)(B) (any violation of 18 USC § 1341).

49.

18 USCA § 1341 describes the offense of mail fraud as follows:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises… places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to

be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both. …

50.

Starting no later than May of 2010, Defendant GSN engaged in an enterprise designed to defraud and obtain money from Plaintiff (and similarly situated customers of GSN) through mail fraud. Specifically, Defendant knowingly prepared and sold false appraisals (accompanied by jewelry) intending to deceive Plaintiff and similarly situated customers into believing jewelry they purchased was more valuable than it was and to induce Plaintiff and similarly situated customers to continue to purchase items at inflated prices and hold them beyond any contractual period of return. Said appraisals and the accompanying jewelry were delivered to Plaintiff Glover (and on information and belief many others) by the US Postal Service or other interstate carrier.

51.

The specific fraudulent statements included the statements listed above suggesting that the appraised items were worth well more than the price paid, and that the appraisals were independent and accurate.

52.

On information and belief, Defendant GSN knowingly participated and profited from the scheme to defraud and take money from Plaintiff and similarly situated customers by acts of mail fraud.

53.

Defendant GSN engaged in hundreds of such sales with respect to Plaintiff Glover alone, each of which constitutes a separate predicate act, meaning that Defendant has engaged directly or indirectly in hundreds of predicate acts towards Plaintiff alone.

**B.**    **Wire Fraud:**

54.

Wire Fraud constitutes a predicate act under O.C.G.A. § 16-14-3(9)(A)(xxix) ("Racketeering activity" means to commit, to attempt to commit, or to solicit, coerce, or intimidate another person to commit any crime which is chargeable by indictment under the following laws of this state…(xxix). Any conduct defined as "racketeering activity" under 18 U.S.C. § 1961(1)(A),(B),(C), and (D)).

55.

The definition of "racketeering activity" in 18 USCA § 1961(1)(B) includes wire fraud (any violation of 18 USCA § 1343 (relating to wire fraud)).

56.

18 USCA § 1343 describes the offense of wire fraud as follows:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both….

57.

Starting no later than May of 2010, Defendant GSN engaged in an enterprise designed to defraud and obtain money from Plaintiff and similarly situated customers of GSN through wire fraud.  Specifically, Defendant caused to be prepared and sold false appraisals along with items of jewelry intending to deceive Plaintiff and similarly situated customers into believing the jewelry was more valuable than it was and intended to induce Plaintiff and similarly situated customers to continue to purchase items at inflated prices.  These appraisals were offered for sale over interstate television and wire broadcasting.

58.

The specific fraudulent statements, included the statements listed above suggesting that the items were worth significantly more than the price paid, and that the appraisals were independent and accurate.

59.

On information and belief, Defendant GSN knowingly participated and profited from the scheme to defraud and take money from Plaintiff and similarly situated customers by acts of wire fraud.

60.

Defendant engaged in hundreds of such sales with respect to Plaintiff Glover alone, each of which alone constitutes a separate predicate act, meaning that Defendant has engaged directly or indirectly in hundreds of predicate wire fraud acts towards Plaintiff alone.

## C.    Theft By Deception.

61.

Theft by deception constitutes a predicate act under O.C.G.A. § 16-14-3(9)(A)(ix).

62.

O.C.G.A. § 16-8-3 describes the offense of theft by taking as follows:

(a) A person commits the offense of theft by deception when he obtains property by any deceitful means or artful practice with the intention of depriving the owner of the property.

(b) A person deceives if he intentionally:

(1) Creates or confirms another's impression of an existing fact or past event which is false and which the accused knows or believes to be false;

(2) Fails to correct a false impression of an existing fact or past event which he has previously created or confirmed;

(3) Prevents another from acquiring information pertinent to the disposition of the property involved;…

63.

Defendant GSN has committed acts of theft by deception directly or by participation in conspiracy. The specific acts that constitute theft by deception include, but are not limited to, utilizing the appraisals to create a false impression that the jewelry is worth more than it actually is, utilizing that false impression to cause other purchases of jewelry at prices well above market and to prevent return of the jewelry.

64.

Defendant's multiple illegal acts have been taken as part of an ongoing pattern of racketeering activity designed to obtain money from Plaintiff Glover and other similarly situated customers of GSN.

65.

Defendant's actions have and continue to cause Plaintiff damages in an amount to be demonstrated at trial.

66.

Based on the foregoing, Plaintiff is entitled to an award of his damages, plus three times his actual damages, and an award of its reasonable fees and costs.

## COUNT III
## BREACH OF CONTRACT

### 67.

Plaintiff restates and incorporates the allegations of Paragraphs 1 through 66 as if fully set forth herein.

### 68.

Based on representations by GSN, Plaintiff agreed to purchase jewelry items along with an appraisal that was fair, independent and accurate.  In addition, Plaintiff also agreed to purchase insurance for shipping and other shipping and handling costs.  Receipt of the independent, fair and accurate appraisals was a material element of all aspects of the agreement.

### 69.

Plaintiff Glover paid all amounts due and performed all aspects of the contract he was required to perform in order to demand full and complete performance from GSN.

### 70.

GSN breached the agreement by: (1) failure to provide jewelry that was worth the value reflected on the appraisal; and (2) failure to provide fair, accurate or independent appraisals.

71.

Plaintiff gave GSN timely notice of its breach of contract, offered to return the jewelry and other items obtained, and demanded rescission of the agreement or compensation for the breaches.  GSN refused his request.

72.

GSN's breaches of contract have caused Plaintiff damages in an amount to be demonstrated at trial. Alternatively, at his election, GSN's breach of contract authorizes rescission.

## COUNT IV
## CONSUMER FRAUD

73.

Plaintiff restates and incorporates the allegations of Paragraphs 1 through 72 as if fully set forth herein.

74.

Many of the activities that form the basis of this Complaint, including the origination of the advertising, the initiation of delivery, and the drafting of the appraisals, took place in Georgia.  As such, they are subject to the provisions of the Georgia Fair Business Practices Act of 1975 (the "FBPA"). O.C.G.A. § 10-1-390 *et seq.*

75.

In addition, the sales to Plaintiff Glover were made to him in Colorado and the items of jewelry were shipped to him in Colorado.  As such, in addition to any other applicable law, the sales were subject to the Colorado Consumer Protection Act. C.R.S. § 6-1-101 *et seq.* (the "CPA").

76.

Pursuant to the FBPA, a party engages in unfair and deceptive acts and practices in consumer transactions when it:

a.       "Caus[es] actual confusion or actual misunderstanding as to the source, sponsorship, approval, or certification of goods or services;"  O.C.G.A. § 10-1-393(2);

b.       "Caus[es] actual confusion or actual misunderstanding as to affiliation, connection, or association with or certification by another;" Id. at ¶ 3;

c.       "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have…. " (O.C.G.A. § 10-1-393(5));

d.       "Represent[s] that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another;" Id. at ¶7; or,

e.      "Mak[es] false or misleading statements concerning the reasons for, existence of, or amounts of price reductions;" Id. at ¶ 11;

77.

Pursuant to the CPA, a party engages in a deceptive trade practice when, in the course of such person's business of vocation, such person, among other things:

a.      Knowingly makes a false representation as to the source, sponsorship, approval, or certification of goods, services, or property;

b.      Knowingly makes a false representation as to affiliation, connection, or association with or certification by another;

c.      Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods, food, services, or property or a false representation as to the sponsorship, approval, status, affiliation, or connection of a person therewith;

d.      Represents that goods, food, services, or property are of a particular standard, quality, or grade, or that goods are of a particular style or model, if he knows or should know that they are of another;

e.      Advertises goods, services, or property with intent not to sell them as advertised;

f.      Makes false or misleading statements of fact concerning the price of goods, services, or property or the reasons for, existence of, or amounts of price reductions; or

g.      Fails to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction.

78.

Defendant violated the FBPA and the CPA by making false representations about the source, value, certification and other aspects of the jewelry, by provision of false and misleading appraisals and by other similar actions.

79.

Defendant's deceptive trade practices were intended to and did induce Plaintiff Glover to purchase jewelry from GSN, to prevent him from having the jewelry independently appraised, prevent him from returning the jewelry within the period within which GSN advertised that it would accept product returns.

80.

The actions of Defendant are part of a pattern of conduct in retail sales that impacts large portions of the public, including large numbers of citizens of Georgia and Colorado, some of the places where their advertising, internet and television

programing is transmitted.  Moreover, the advertising is geared towards customers whose relative sophistication and bargaining power, especially in the jewelry business, is small.  As a result, it has and continues to impact many Georgia and Colorado consumers, such as Plaintiff Glover.

81.

The deceptive practices have caused damages to Plaintiff.  Among other things, they have caused him to purchase jewelry at inflated prices, and have caused him to pay for shipping and insurance that he would not have paid. Plaintiff Glover's losses exceed $1.5 million, minus whatever value the items actually have.

82.

The actions of Defendant have been intentional, knowing and in bad faith such that Defendant should be liable for actual and punitive damages, costs and attorneys' fees.

83.

In addition, Defendant has demonstrated that it has and will continue to injure the public with its sales tactics, such that it should be immediately and permanently enjoined from further improper sales practices.

## COUNT V
## BAD FAITH

84.

Plaintiff restates and incorporates the allegations of Paragraphs 1 through 83 as if fully set forth herein.

85.

The actions of the Defendant have been in bad faith, stubbornly litigious and have caused unnecessary trouble and expense so as to justify an award of Plaintiff's attorneys fees and expenses of litigation pursuant to O.C.G.A. § 13-6-11.

## COUNT IV
## PUNITIVE DAMAGES

86.

Plaintiff restates and incorporates the allegations of Paragraphs 1 through 85 as if fully set forth herein.

87.

The actions of Defendant GSN demonstrate that intentional or willful misconduct and an entire want of care or indifference to consequences, so as to justify an award of punitive damages.

88.

As a result, Plaintiff is entitled to recover punitive or exemplary damages from the Defendant in an amount to be determined by the enlightened conscience of the Jury.

**WHEREFORE**, Plaintiff Glover respectfully prays:

a.    That he have a trial by jury on all applicable claims;

b.    That he recover for fraud in an amount to be determined at trial;

c.    That he recover for violation of RICO in an amount to be determined at trial;

d.    That he recover for breach of contract in an amount to be determined at trial;

e.    That he recover its reasonable attorney's fees and expenses of litigation under O.C.G.A. § 13-6-11;

f.    That he recover for violations of the Georgia Fair Business Practices Act and the Colorado Consumer Protection Act in an amount to be determined at trial

g.    That Defendant be immediately and permanently enjoined from further improper sales tactics;

h.    That Plaintiff Glover recover punitive damages in an amount determined by the enlightened conscious of the jury; and

i.       That he receive such other and further relief as is just and proper.


Respectfully submitted this 4th day of April, 2013.

**BAKER DONELSON BEARMAN**
**CALDWELL & BERKOWITZ, P.C.**


/s/ Steven G. Hall
Steven G. Hall
Georgia Bar No. 319308
*Attorneys for Plaintiff*

Monarch Plaza, Suite 1600
3414 Peachtree Road, N.E.
Atlanta, Georgia  30326
Telephone:  (404) 577-6000
Facsimile:  (404) 221-6501